UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALEECE HUSSEY,

        Plaintiff,

v.                             Case No. 6:20-cv-2407-MAP

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for disability insurance benefits (DIB). Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly weigh the medical opinion of her treating neurologist, Christopher J. Prusinski, D.O., in determining Plaintiff's residual functional capacity (RFC). As the ALJ's decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    *I.*    *Background*

Plaintiff, who was born in 1963, claimed disability beginning January 10, 2019 (Tr. 163). She was 55 years old on her alleged onset date (Tr. 163). Plaintiff obtained four or more years of a college education, and her past relevant work experience included work as a probation and parole officer, for which she obtained a certification (Tr. 41, 63, 192-93). Plaintiff alleged disability due to seven herniated discs, degenerative disc disease, severe Dupuytren contracture in both hands, bulging disc,

migraines, sciatic nerve issues, anemia, thyroid myalgia, carpal tunnel syndrome in both hands, thyroid nodules, a cyst on her kidneys, blood in her urine, dizziness, confusion, memory loss, bone spurs, and scoliosis (Tr. 191).

Given her alleged disability, Plaintiff filed an application for DIB (Tr. 163-66). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 70-95, 99-104). Plaintiff then requested an administrative hearing (Tr. 105-06). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 31-69). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 7-23).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since January 10, 2019, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: Dupuytren's contracture in both hands, carpal tunnel syndrome, and degenerative disc disease of the cervical and lumbar spine (Tr. 12). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained the RFC to perform medium work with the following additional limitations: could lift and carry and push and pull 30 pounds occasionally and 25 pounds frequently; could frequently

stoop, balance, kneel, crawl, crouch, and climb ramps and stairs; could occasionally climb ladders, ropes, or scaffolds; could frequently reach, handle, and finger bilaterally; and could never be exposed to unprotected heights or moving, unprotected machinery (Tr. 14).   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 14).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could perform her past relevant work as a probation officer (Tr. 18).   Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 18).   Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 160-62).   Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

II.    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal

standards.  *See* 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision.  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.   *Discussion*

Plaintiff solely argues that the ALJ erred by failing to properly consider the opinion of Dr. Prusinksi, Plaintiff's treating neurologist.  More specifically, Plaintiff contends that the RFC conflicts with the limitations set forth by Dr. Prusinski in a

June 2020 Work Restrictions Form and a June 2020 Physical Medical Source Statement (*see* Tr. 253, 729-732) and that the ALJ did not rely on substantial evidence in providing his rationale for finding Dr. Prusinski's opinion unpersuasive.  In doing so, Plaintiff asserts that the ALJ erred by confining himself to the evidence identified on the June 2020 Physical Medical Source Statement, improperly concluding that no objective findings supported Dr. Prusinski's opinion, improperly determining that Dr. Prusinski's opinion was inconsistent with other evidence of record, substituting his opinion for that of Dr. Prusinski, failing to account for an impairment that fluctuates in severity, failing to consider the purpose and extent of the treating relationship between Plaintiff and Dr. Prusinski, and taking portions of Plaintiff's testimony out of context.

Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary.  *Winschel.*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).  Good cause existed where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted).  Claims filed on or after March 27, 2017 are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians, however.  *See* 20 C.F.R. § 404.1520c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir.

2019).  Of note, the new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017.  20 C.F.R. § 404.1520c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 895-98 (11th Cir. 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021) (*per curiam*).[1]  Indeed, the Eleventh Circuit recently concluded that, since the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's prior precedents applying the so-called treating-physician rule.  *Harner*, 38 F.4th at 896.  Accordingly, since Plaintiff submitted her application for benefits on January 29, 2019 (Tr. 163-66), the ALJ properly applied the new regulation.

Namely, under 20 C.F.R. § 404.1520c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source.  20 C.F.R. § 404.1520c(a); *see Tucker v. Saul*, Case No. 4:19-CV-00759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020).  Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the medical source's specialization.  20 C.F.R. § 404.1520c(c)(1)-(4).  The primary factors an ALJ will

---

[1]  Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). Beyond supportability and consistency, an ALJ may also consider the medical source's specialization and the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. § 404.1520c(c)(3)(i)-(v), (4), & (5). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other factors.[2] 20 C.F.R. § 404.1520c(b)(2).

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

Here, Plaintiff presented for an initial neurological evaluation with Dr. Prusinski in June 2019, complaining of bilateral hand pain, numbness, tingling, weakness, and swelling with inability to use her hands (Tr. 592-97). During the evaluation, Dr. Prusinski conducted a physical examination, finding some sensory deficits, including diminished temperature and pin prick sensation in a bilateral ulnar nerve distribution, evidence of bilateral hypothenar atrophy left greater than right, and segmental distributions bilaterally at L-4, L-5, C-5, and C-6 (Tr. 592-93). Beyond that, however, Dr. Prusinski observed normal findings, including normal and symmetric muscle bulk, tone, and strength; intact position, vibration, and parietal cortical senses; normal cerebellar testing results; normal and symmetric phasic myotatic reflexes; and normal station and gait (Tr. 592-93). At that time, Dr. Prusinski determined that Plaintiff had bilateral ulnar neuropathy; history of blastomycosis; chronic pain syndrome; chronic neck pain with herniations at C-3-4, C-4-5, C-5-6, and C-6-7 with chronic bilateral C-5 and bilateral C-6 cervical radiculopathies; chronic low back pain with multilevel herniations at L-3-4, L-4-5, and L-5-S-1 with chronic bilateral L-5 and left L-4 radiculopathies; and a thyroid lesion (Tr. 592).

The following month, Plaintiff returned to Dr. Prusinski for a neurologic follow-up appointment, complaining of not feeling well, with persistent neck and low back pain with radiation into the upper and lower extremities with numbness and tingling (Tr. 622). Dr. Prusinski noted that the neurologic impressions remained unchanged from her June 2019 appointment (Tr. 622). Examination of the upper extremities revealed bilateral C-5 and bilateral C-6 radiculopathies and bilateral ulnar compressive

neuropathies at the elbows (Tr. 622).  On the same day, Dr. Prusinski conducted an electromyography (EMG) and nerve conduction study (NCS) on Plaintiff's upper extremities bilaterally (Tr. 623).  Dr. Prusinski concluded that Plaintiff suffered from bilateral C-5 and C-6 radiculopathies and bilateral ulnar compressive neuropathies at her elbows with ongoing denervation (Tr. 623).  Dr. Prusinski therefore provided ulnar restrictions to Plaintiff and recommended surgical evaluation of the cervical and lumbar spine (Tr. 622).

Plaintiff saw Dr. Prusinski again in October 2019, complaining of sub-occipital headaches, neck pain, mid-back pain, low-back pain, and stiffness with radiation into the upper and lower extremities along with numbness, tingling, and weakness (Tr. 620-21).  Examination of the lower extremities revealed bilateral L-5 and left L-4 radiculopathies (Tr. 620).  Dr. Prusinski noted that Plaintiff's neurologic and musculoskeletal symptoms remained unchanged from her initial visit, including restricted passive range of motion in the cervical and lumbar spine regions and persistent paraspinal spasm on palpation (Tr. 620).  Dr. Prusinski performed another EMG and another NCS, concluding that Plaintiff had bilateral L-5 and left L-4 radiculopathies with ongoing denervation (Tr. 621).  Given his findings, Dr. Prusinski indicated that Plaintiff's condition required greater occipital nerve block, SSNB, SIJI, and trigger point injections, which improved but did not resolve Plaintiff's problems (Tr. 620).

Dr. Prusinski then saw Plaintiff in January 2020, with Plaintiff continuing to complain of headaches, neck pain, mid-back pain, low-back pain, and stiffness with

radiation to the upper and lower extremities (Tr. 619).  Dr. Prusinski again indicated that Plaintiff's musculoskeletal and neurologic complaints remained unchanged from the initial evaluation (Tr. 619).   Similarly, Dr. Prusinski's neurologic impressions remained unchanged from the initial evaluation (Tr. 619).  Dr. Prusinski stated that continued care and treatment as previously recommended had been discussed with Plaintiff, with treatment options reviewed at length (Tr.  619).

Later, in June 2020, Dr. Prusinski filled out a Work Restrictions Form and a Physical Medical Source Statement (Tr. 253, 729-732).   On the Work Restrictions Form, Dr. Prusinski indicated that Plaintiff could not engage in the following: prolonged looking up, looking down, or working overhead; repetitive bending or twisting at the waist; prolonged sitting or standing greater than two hours without a break; repetitive use of both hands; and lifting greater than 30 pounds (Tr. 253).  Dr. Prusinski identified similarly restrictive limitations on the Physical Medical Source Statement (Tr. 729-32).

Namely, Dr. Prusinski stated that Plaintiff's symptoms included neck and low back pain that radiated to her upper and lower extremities and that her prognosis remained fair (Tr. 729).  Dr. Prusinski opined that Plaintiff could sit for one hour at a time before needing to get up; stand for one hour at a time before needing to sit down or walk around; sit, stand, and walk for about 4 hours total in a normal eight-hour workday with normal breaks; occasionally lift and carry 10 pounds or less; rarely lift and carry 20 pounds; never lift or carry 50 pounds; occasionally stoop, crouch, squat, or climb stairs; and rarely twist or climb ladders (Tr. 729-31).   According to Dr.

Prusinski, Plaintiff would require a job that permitted shifting at will from sitting, standing, or walking and included periods of walking around because prolonged sitting and standing increased Plaintiff's lower back pain (Tr. 729-30).   Dr. Prusinski indicated that Plaintiff would not need to elevate her legs or use a cane or other hand-held assistive device for standing or walking (Tr. 730-31).   Regarding Plaintiff's ability for reaching, handling, and fingering, Dr. Prusinski stated that Plaintiff experienced significant limitations due to her cervical radiculopathy and ulnar neuropathy but did not indicate the percentage of time during an eight-hour workday that Plaintiff could perform such activities, noting only that his assessment was "per patient's limitations and symptoms" (Tr. 731-32).   Dr. Prusinski could not identify a specific date for the onset of Plaintiff's symptoms and limitations, indicating only that they occurred prior to Plaintiff's first visit with him (Tr. 732).   As to the basis for his opinion, Dr. Prusinski pointed to neuro diagnostic test results, a diagnosis of a herniated disc of the lumbar spine, some medical records not attached to the Physical Medical Source Statement, and Plaintiff's limitations and symptoms (Tr. 729-32).

In the decision, the ALJ summarized and considered Dr. Prusinski's opinion (Tr. 16).   In considering Dr. Prusinski's opinion, the ALJ did not find it persuasive, stating:

> I do not find the above opinion to be persuasive.  Firstly, I note that in support of his assessment regarding the claimant's exertional and postural abilities, Dr. Prusinski only noted that doing these activities increases the claimant's pain.  This is a subjective finding based on the claimant reports.  Further, there are no objective findings in his records to support this assessment.  Additionally, while he checked off that the claimant has significant limitations for reaching, handling or fingering,

this opinion was vague and subjective, as he did not opine how long the claimant could do these activities, but when solicited to provide that information, he noted "per patient's limitation and symptoms." Further, this opinion is inconsistent with the other treating evidence. Notably, in May 2019, an orthopedist documented that the claimant was able to demonstrate full flexion and full extension of the fingers and he documented that her hands are functional. Congruently, in April 2019, the consultative examination documented that the claimant had grip strength of 5/5 bilaterally and 10/10 gross manipulation in each hand. Further, it was found that the claimant had a normal gait and that straight leg raise testing was negative. I also note that the claimant's testimony that she went skiing for two hours a day for at least a couple of days in March 2020, and that she is very active and wants to remain so, is also inconsistent with the above opinion. Thus, as Dr. Prusinski's own records do not support his assessment and the overall treating evidence and testimony is inconsistent with his opinion, I do not find his assessment to be persuasive.

(Tr. 16). Notwithstanding Plaintiff's arguments to the contrary, the ALJ properly considered Dr. Prusinski's opinion and provided substantial evidence in support of the decision.

Primarily, the ALJ highlighted the lack of consistency and supportability of Dr. Prusinski's opinion, which complies with the requirements of the new regulations. *See* 20 C.F.R. § 404.1520c(a), (b)(2), & (c). As the ALJ discussed, Dr. Prusinski's opinion was inconsistent with the other medical evidence of record. For example, the ALJ referenced an April 2019 consultative examination with Dr. Donna Lester, wherein Plaintiff was able to get up and out of the chair without difficulty; was able to get on and off the examination table without difficulty; ambulated without difficulty and without assistive device; showed normal gait; had normal grip strength of 5/5 in the right and in the left hand; had normal fine and gross manipulative skills at a 10/10 in the right hand and in the left hand; had motor strength of 5/5 in all extremities; showed

normal range of motion in all areas; showed no joint deformities; and all leg-raising tests were negative and without pain (Tr. 16, 585-86).  Shortly thereafter, in May 2019, Dr. Edward St. Mary examined Plaintiff and indicated that Plaintiff showed full flexion and full extension of her fingers and that she still had functional hands (Tr. 16, 606).  Following that, in March 2020, when Plaintiff sought treatment for a knee injury following a ski trip, the examination notes indicated that Plaintiff showed a normal gait, no limp, ambulation with no assistive device, and normal neurologic results (Tr. 668).  Dr. Prusinski's restrictive limitations simply do not comport with the other evidence of record.

Moreover, Dr. Prusinski's own treatment records do not support such extreme limitations.  As the ALJ discussed, Dr. Prusinski mainly based his opinion on Plaintiff's subjective complaints that exertional and postural activities increased her pain (Tr. 16).  Indeed, the ALJ properly concluded that no objective findings in Dr. Prusinski's treatment notes supported Dr. Prusinski's opinion.  For instance, upon examination, Dr. Prusinski found that Plaintiff had a normal station and gait, normal reflexes, and normal and symmetric muscle bulk, tone, and strength (Tr. 592-93), yet he opined that Plaintiff could only stand or walk for one hour at a time and four hours total in an eight-hour workday and would need the ability to shift positions and to walk around during an eight-hour workday (Tr. 729-31).

In support of her argument, Plaintiff points only to diagnoses set forth in MRIs, EMGs, and NCSs (Tr. 591-97).  "Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by

clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). While diagnostic testing confirmed that Plaintiff suffered from the noted impairments, neither the diagnostic results nor the findings set forth in Dr. Prusinski's treatment notes supported the severity of the limitations opined by Dr. Prusinski. The ALJ appropriately found that Dr. Prusinski's opinion was unpersuasive because it both lacked consistency with the other evidence of record and supportability in his own treatment notes.

Relatedly, Plaintiff takes issue with the ALJ's consideration of the opinions of the state agency medical consultants, Dr. Shakra Junejo and Dr. Frank Walker (Tr. 16-17, 76-79, 90-92), arguing that the ALJ failed to provide adequate rationale for finding the opinions of non-examining state agency physicians more persuasive than Dr. Prusinski's opinion. As Plaintiff argues, the regulations state that a medical source may have a better understanding of a claimant's impairments if he or she examines the claimant than if the medical source only reviews evidence in the claimant's folder. 20 C.F.R. § 404.1520c(c)(3)(v). In finding their opinions partially persuasive, the ALJ recognized the limitations posed by Dr. Junejo's review of the medical evidence

through April 2019 and Dr. Walker's review of the medical evidence through August 2019 (Tr. 16-17, 79, 92).  The ALJ stated that the evidence relied upon by Drs. Junejo and Walker supported their opinions, but based on the overall treating records, including the EMG study conducted by Dr. Prusinski, which Drs. Junejo and Walker did not have an opportunity to review, the ALJ found that the overall evidence was consistent with greater limitations than they opined (Tr. 17).  Given that, the RFC included greater restrictions than those set forth by Drs. Junejo and Walker.  As the regulations do not require any specific evidentiary weight to be afforded to a particular medical opinion, the ALJ did not need to provide any further rationale for finding the opinions of Drs. Junejo and Walker more persuasive than Dr. Prusinski.

Plaintiff next argues that the ALJ failed to consider the purpose and extent of the treating relationship between Plaintiff and Dr. Prusinski or to consider the fact that Dr. Prusinski specialized as a neurologist.  As noted above, the new regulations do not require the ALJ to explain how he or she considered the other factors outlined in 20 C.F.R. § 404.1520c(c) beyond supportability and consistency.   20 C.F.R. § 404.1520c(b)(2).  As noted, included among those factors are the specialization of the medical source and the treating relationship the medical source had with the claimant, including the length of the treating relationship, the frequency of the examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship.  20 C.F.R. § 404.1520c(c)(3) & (4).  Despite the regulation explicitly stating that the ALJ may, but is not required to, explain how he or she considered those factors, Plaintiff argues that the ALJ should have nonetheless

articulated his findings as to those factors. Such argument lacks merit given the explicit permissive directive set forth in 20 C.F.R. § 404.1520c(b)(2), and, as a result, the ALJ did not err in that regard.

The ALJ also did not err by purportedly confining himself to the evidence identified on the Physical Medical Source Statement or substituting his opinion for that of Dr. Prusinski. Instead, the ALJ properly considered and discussed Dr. Prusinski's treatment notes and opinion along with the other evidence of record, including the opinions of Dr. Lester, Dr. Junejo, and Dr. Walker, in finding that Dr. Prusinski's opinion was unpersuasive (Tr. 14-18). As explained more fully above, the ALJ considered the appropriate factors set forth in 20 C.F.R. § 404.1520c when analyzing Dr. Prusinski's opinion. Rather than substituting his opinion for that of Dr. Prusinski or relying solely upon the statements in the Physical Medical Source Statement, the ALJ pointed to the other evidence of record that conflicted with Dr. Prusinski's opinion and to the lack of support in Dr. Prusinski's own treatment notes and the Physical Medical Source Statement for the severe limitations that Dr. Prusinski identified. To that end, the ALJ did not err.

Further, the ALJ did not err by failing to account for Plaintiff's statements that her impairment fluctuated in severity. At the administrative hearing, Plaintiff testified that her symptoms were unpredictable and that she "could be okay for half a day or one day, but then it just comes on and out of nowhere all the time" (Tr. 47). She stated that she had to wait until her symptoms subsided to try to work (Tr. 47). In the decision, the ALJ discussed Plaintiff's treatment notes outlining her subjective

complaints regarding varying levels of pain, weakness, and numbness but, at the same time, noting normal findings upon examination (Tr. 14-18).  While Plaintiff may have experienced greater severity of symptoms on certain days or at certain times, the evidence of record does not support Plaintiff's contention that her symptoms ever rose to the level of disabling or debilitating.  Consequently, the ALJ did not err in considering any fluctuations in Plaintiff's condition or any attendant symptoms.

Finally, regarding Plaintiff's testimony as to her activities, the ALJ did not take it out of context, as Plaintiff contends.  During the administrative hearing, Plaintiff testified that, in March 2020, she went skiing for a couple days for a couple hours each day before injuring her knee (Tr. 53-54).  The ALJ then questioned her regarding statements she made to a medical source in March 2020 describing herself as being very active and interested in maintaining her high level of activity (Tr. 54, 668).  In response, Plaintiff indicated that she tried to remain active, keep moving and doing things, and keep busy, including going for walks, trying to swim, going for 10-minute bike rides on a beach cruiser, and doing exercise for her core and stretching (Tr. 54-55).  She later elaborated that she tried to do everything in increments and slowly throughout the day, including resting for a couple hours and then trying to go on a walk (Tr. 57-58).

Even though Plaintiff disagrees, the ALJ properly indicated that Plaintiff's statements regarding her ability to go on a skiing trip and her desire and efforts to maintain an active lifestyle conflicted with her allegations of debilitating pain, numbness, and weakness in her back and extremities.  Indeed, in evaluating a

claimant's symptoms, the ALJ considers both inconsistencies in the evidence and the extent to which any conflicts exist between the claimant's statements and the rest of the evidence, including the claimant's history, signs and laboratory findings, and statements by treating or nontreating sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(c)(4).  Here, the ALJ properly highlighted the inconsistencies between Plaintiff's statements regarding her abilities and the other evidence of record.  Regardless, as the Commissioner contends, the ALJ did not solely rely upon those statements but rather correctly considered them in conjunction with the other evidence of record, including Dr. Prusinski's opinion, in concluding that Plaintiff was not disabled.

IV.    *Conclusion*

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.  Accordingly, after consideration, it is hereby

ORDERED:

1.    The decision of the Commissioner is affirmed.

2.    The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of August, 2022.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE